**BOARD OF TRADE OF CITY OF CHICAGO v. CONSOLIDATED STOCK EXCH. OF BUFFALO et al.**

(Circuit Court, W. D. New York. April 29, 1903.)

No. 201.

1. BOARD OF TRADE—CONTINUOUS QUOTATIONS—USE—INJUNCTION.

Where a board of trade sought to restrain the use of "continuous quotations," which were alleged to have been surreptitiously obtained by defendant, and such term was defined in contracts between complainant and telegraph companies for the transmission of the same as meaning prices electrically and uninterruptedly transmitted from complainant's exchange to such telegraph companies, and thence to their patrons at intervals of less than 10 minutes, and it did not appear that the quotations received by defendant were continuous quotations, as so defined, or that they had been received prior to their having been dedicated to the public, an injunction would not be granted pendente lite.

121 F.—28

Henry S. Robbins and Ansley Wilcox, for complainant.
Charles W. Strong and Harvey L. Brown, for defendants.

HAZEL, District Judge.   The bill of complaint seeks to enjoin the defendants from using continuous market quotations at Buffalo, N. Y., as published on the exchange floor of the complainant in the city of Chicago.   This motion for a preliminary injunction is founded upon the bill and affidavits.   The basis of the application is a contract between complainant and several telegraph companies and the alleged unlawful use by the defendants of the quoted market prices.   The relations established by the contract restrict the publication by the telegraph companies of continuous quotations to companies and individuals who are their patrons, and subject to certain stipulated conditions.   The wrongful act alleged to have been committed, a continuance of which is threatened, is the theft by the defendants of the continuous quotations as they are electrically transmitted over the wires to the telegraph companies, or that such continuous quotations are surreptitiously received by them from patrons of the telegraph companies.   It may be that the quoted prices are unlawfully received by the defendants in the manner charged in the bill, but the moving papers are equally open to the inference that the prices quoted are not continuous quotations of prices as that term is defined by the contract between the complainant and the telegraph companies, and which is annexed to the bill of complaint.   Has not the complainant, by the arrangement with the telegraph companies, established a precise time during which it retains a property right in the quotations?   Have not the telegraph companies, by the terms of the agreement, an optional right, after the expiration of the restricted period, to distribute to the general public the prices announced on the exchange floor?   Upon this point I express no opinion, as the restraining power of the court in the case at bar is sought solely by reason of the unauthorized and illegal use by the defendants of "continuous quotations."   No other construction may be given the papers submitted.   The contract in evidence defines that term as one referring to prices electrically and uninterruptedly transmitted from complainant's exchange floor to the office of the telegraph companies, and from thence to their patrons in the larger cities of the United States, where the price of the commodity is quoted oftener than at intervals of 10 minutes.

The bill of complaint asserts that the continuous quotations published to the telegraph companies and their patrons are transmitted to the larger cities within 15 to 20 seconds from the time the prices are established in complainant's pit.   The affiant, Mayfield, who was several times in defendants' office on the opening of the Chicago market, does not testify that the quotations received in his presence were continuous quotations, as defined by the contract in question. It does not clearly appear at what precise time the prices were received by the defendants relative to the hour when the market opened or their several publications in Chicago.   Although Mayfield was in defendants' office 30 minutes each time, the inferences that may be

fairly drawn from his observations induce the belief that such prices may have been received subsequent to the voluntary publication by complainant, and beyond the time limit stipulated in the contract. If such was the case, the law affords no protection. Board of Trade of City of Chicago v. C. B. Thomson Commission Co. (C. C.) 103 Fed. 902. It is undoubtedly the law beyond dispute that complainant not only has a property right in original quotations of prices for a limited period of time, but it may also control the publication thereof. The unauthorized use of the continuous quotations is an infringement of such right. I am of opinion, however, that the bill and supporting affidavits do not disclose such use of continuous quotations by the defendants as is defined or forbidden by the agreement. The complainant seeks relief simply because of a violation of this contract right. Under such circumstances the facts will not permit disposing summarily of the merits. I have not overlooked the assertion that the automatically unrolled tape on the ticker was identical with the tape of another quotation ticker directly in connection with complainant. Nevertheless, I am unable to decide from the meager evidence before me that the complainant retained a property right in the prices quoted, which, from some unexplained source, were electrically transmitted to the office of the defendants. For the foregoing reason I am of the opinion that at this stage of the case a decision directing the issuance of an injunction should be deferred until the hearing upon the merits.

Motion for injunction pendente lite denied.